STUTSON v. JORDAN. See Case No. 6,959.

---

## Case No. 13,581.

### In re STUYVESANT BANK.

[5 Ben. 566;[1] 6 N. B. R. 272.]

District Court, S. D. New York. March, 1872.

BANKRUPTCY—TRUSTEE AND RECEIVER—INCOMPATIBLE INTERESTS.

1. At the first meeting of creditors in this case no assignee was chosen. The creditors resolved to appoint a trustee. The trustee named had been appointed receiver of the estate of the bankrupt by a state court, and, as such receiver, had taken possession of such estate, and still held it. Such proceedings were one of the grounds on which the adjudication of bankruptcy passed. One of the committee of creditors named, consisting of three persons, was president of a bank, which was a creditor, and claimed to be paid in full, by preference. *Held*, that the position of the receiver was such as to be incompatible with his being appointed a trustee in these proceedings.

2. The president of the bank, also, ought not to be one of the committee of creditors.

3. The resolution appointing the trustee and the committee of creditors would not be confirmed, and as no assignee had been chosen, the court would appoint an assignee.

[Cited in brief in Re Cooke, Case No. 3,169.]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

In bankruptcy.

Dudley Field, for Mr. Archer.
Charles Tracy and G. L. Walker, opposed.

BLATCHFORD, District Judge. Being of opinion, on the papers before me in this case, that the interests of the creditors of the bankrupt will not be promoted by the appointment of Mr. Archer as trustee, I must decline to confirm the resolution to that effect.

One of the grounds on which the bank was adjudged a bankrupt by this court was, that, being insolvent, it procured and suffered its property to be taken on legal process, with intent, by such disposition of its property, to defeat and delay the operation of the bankruptcy act [of 1867 (14 Stat. 517)], and suffered and procured a receiver of all its property and effects to be appointed by a state court, and surrendered possession thereof to such receiver. Mr. Archer was appointed such receiver, and is such still. All the property which belonged to the bank passed into his hands as such receiver, he thereafter claiming the legal title to it, by transfer, and claiming to hold it as against all the world. Such of it as remains in his hands he claims to hold by the same title. The proceedings in bankruptcy were commenced on the 23d of December, 1871. If Mr. Archer is ever to account to this court, or to its proper officer, for what was the property of the bank, he must account for it as it stood on that day. It must be administered as of that day, and from that day, according to such principles of administration as may be determined by this court. It appears that Mr. Archer has, since that day, been dealing with the property which came into his hands as receiver, as having the legal title to it, collecting moneys and paying them out. For these acts he must, if he is to account to this court at all for them, account to a trustee or assignee to be appointed by this court. It is not proper that he should, as trustee, be plaintiff and, as receiver, be defendant, in respect to these matters. Moreover, nothing can pass from him as receiver, of which he is now in possession, to any trustee or assignee to be appointed by this court, unless he voluntarily surrenders it, or is compelled to do so by proper legal proceedings. It appears that he does not intend to so surrender it, nor does he intend, if confirmed, as trustee, by this court, to cease acting as receiver. He announces that he intends to act both as receiver and as trustee, and have his acts authorized by the state court which appointed him receiver and by this court. This is a position of incompatibility which this court cannot permit one of its officers to occupy. If he is to be trustee under the bankruptcy act, appointed by this court, he must look to this court alone as the source of his authority. If he is to hold and administer, as receiver, under the state laws, the property which he received as receiver, he must so adminis-

ter it without looking to this court for any authority or direction. If, he is to administer such property as a trustee appointed by this court, he must so administer it without looking to the state court, or to any other court but this court, for authority or direction. The emphatic language of Judge Woodruff, in the case of In re Bininger [Case No. 1,420], shows how utterly impossible it is for this court to permit Mr. Archer to occupy, at one and the same time, the two inconsistent positions of a receiver under the state law and a trustee or assignee appointed by this court. He says: "The design and purpose of the bankrupt law is, that the property of insolvents shall be secured to their creditors in the very mode pointed out thereby, with all the facilities for its appropriation, all the security for its administration, all the safeguards against fraud, all the protection against devices to establish false claims, fictitious debts and illegal or inequitable preferences, which that act provides, and in the summary manner in which the proceedings may be conducted. It is not, therefore, for the debtors, or for the debtors and some of the creditors, to say—we can devise a better or safer or more economical mode of reaching the same final result. If it were true, it would be only saying—we will resort to an expedient to defeat the bankrupt law, and our reason therefor is, that we think our plan is wiser and better than that which congress has seen fit to prescribe. But, the administration of the property under a receiver in such a suit does not necessarily accomplish the same result. It is not necessary to enlarge upon this, to anticipate all possible differences, but reference may be made to various provisions of the bankrupt law, such as, requiring the surrender of securities, as a condition of participation in the bankrupt's estate (section 20); excluding claims deemed fraudulent under the act (sections 22, 39); denying to creditors who have received or taken securities, with reason to believe in the insolvency of the debtor, and for the purpose of obtaining a preference, any share of the estate (section 23). * * * These subjects would find no place in the administration of the estate under the state laws, through a receiver. There are, also, summary means of investigation and inquiry peculiar to the bankrupt law, and not known to the other proceeding. So, too, the subject of making dividends from time to time is committed to the determination of creditors (section 27); several classes of debts are declared entitled to a preference and to payment in full in priority to others (section 28); and special modes of determining disputed caims are provided (section 6). There are, doubtless, other differences between the administrations under the bankrupt law and by a receivership under the state laws, but the above are sufficient to show that the two are wholly inconsistent, and that the latter defeats the former."

There is another objection to confirming the proceedings of the creditors in regard to a trustee. They have undertaken to select a committee consisting of three creditors. It is to be taken, that they desire such committee to consist of three persons. Their action, under the act, is a unit, and their resolution must be confirmed as a whole, or not at all. One of the three persons they name, to constitute the committee of creditors, is Mr. Bull, president of the New York Savings Bank. That bank claims, under a provision in the statutes of New York, to be entitled to a preference, and to payment in full, in priority to others; and, by its proof of debt, filed in these proceedings, it claims to have such statutes of New York applied in its favor, by so preferring its claim, in distributing the assets of the bank under the bankruptcy act. This claim of preference is contested by creditors of the bank who are unsecured, and who claim no preference. Under these circumstances, it is manifestly improper that Mr. Bull should be one of the committee of creditors, under whose "direction," according to section 43 of the act, the estate of the bank is to be wound up and settled.

The register certifies to the court, that the first meeting of creditors herein has been finally closed; that, at such meeting, there were some votes cast for an assignee, but there was no choice of assignee; and that the register made no appointment of assignee, there being an opposing interest. It is provided, by section 13 of the act, that, if no choice of assignee is made by the creditors at the first meeting, the judge, or, if there is no opposing interest, the register, shall appoint one or more assignees. The case, therefore, has arisen, where, the resolution nominating a trustee not being confirmed by the court, it becomes the duty of the court to appoint an assignee. The objections to the confirmation of Mr. Archer as trustee apply equally to an appointment of him as assignee, although three-fourths in value of the creditors whose claims were proved nominated him as trustee. I appoint John H. Platt, Esquire, as assignee of the bankrupt.

[For a subsequent proceeding in this litigation, see Case No 13,582.]